Commonwealth *v.* Hamilton.

## COMMONWEALTH *vs.* KENNETH G. HAMILTON.

Middlesex. December 6, 2010. - April 15, 2011.

Present: IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.[1]

*Threatening. Intimidation of Witness. Trial Court,* Probation officers. *Practice, Criminal,* Required finding, Instructions to jury, Prior conviction. *Witness,* Victim, Intimidation. *Statute,* Construction. *Evidence,* Prior conviction, Opinion.

This court concluded that under G. L. c. 275, § 2, the crime of threatening to commit a crime, the target of a threat and the target of the threatened crime need not be the same person. [426-429]

At the trial of a criminal complaint charging threatening to commit a crime, in violation of G. L. c. 275, § 2, the evidence was sufficient to permit a jury to find beyond a reasonable doubt that the defendant meant to express to a probation officer his intention to commit a crime against her daughter, that he had the ability to commit such a crime, and that the circumstances reasonably warranted apprehension on the part of the probation officer. [429-430]

At the trial of a criminal complaint charging threatening to commit a crime, in violation of G. L. c. 275, § 2, the judge's erroneous jury instruction, which in effect required the jury to find that the recipient of the threat was threatened with some type of harm or injury to herself distinct from the allegedly threatened crime against the person of her daughter, did not warrant reversal, where the extra burden imposed by the erroneous instruction fell to the Commonwealth. [430-431]

This court concluded that the rule of lenity required reversal of a criminal defendant's conviction of violating G. L. c. 268, § 13B, for intimidating a probation officer who had in the previous year recommended that the defendant's sentence be revoked and that he be committed to a sentence in a house of correction, where the meaning of the verbs "harm" and "punish" in the statute, as applied to a proceeding, was ambiguous. [431-437]

At the trial of a criminal complaint charging the defendant with threatening to commit a crime, in violation of G. L. c. 275, § 2, in which the recipient of the threat was a probation officer, no substantial risk of a miscarriage of justice arose from the admission in evidence of the defendant's prior convictions or from the judge's limiting instructions regarding that evidence, where, given that the probation officer's entire knowledge of and relationship with the defendant arose from the fact that the defendant had committed criminal offenses before and had been placed on probation as a

[1]Justice Cowin participated in the deliberation on this case prior to her retirement.

consequence, the officer's knowledge of the defendant's prior convictions could be deemed relevant to a determination whether her fear was indeed reasonable, and where the judge gave a specific clarifying instruction in response to a question from the jury, properly directing them to limit their use of the evidence to the probation officer's reasonable beliefs about the defendant's ability to carry out threats, not his propensity to commit crimes. [437-439]

There was no merit to a criminal defendant's contention that a witness was improperly permitted to testify at his trial concerning the defendant's prior convictions in the absence of a certified copy of them, where the prior convictions were not intended to impeach a witness, but rather went to an element of the crime with which the defendant was charged, i.e., the issue whether he made a threat in circumstances that would justify apprehension. [439]

At a criminal trial, no substantial risk of a miscarriage of justice was created by the erroneous admission of testimony by the investigating police detective that improperly expressed an opinion as to the ultimate issue of the defendant's intent, where, in the circumstances, the improper testimony would not have materially influenced the verdict [439-440]; further, there was no error in the testimony of the victim that she knew what the defendant's intent was, where she subsequently directly disavowed knowledge of the defendant's intent [440].

There was no merit to a criminal defendant's contention concerning a file that the victim carried into the court room during the trial and handed to a court officer. [440]

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on January 9, 2008.

After transfer to the Somerville Division of the District Court Department, a motion to dismiss was heard by *Neil J. Walker*, J., and the case was tried before *James L. LaMothe, Jr.*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Kathryn Hayne Barnwell* for the defendant.

*Anne Paruti*, Assistant District Attorney (*Kevin J. Curtin*, Assistant District Attorney, with her) for the Commonwealth.

*Michael J. Fellows*, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

BOTSFORD, J. After he left a voicemail message for a probation officer in which he implied that he could cause harm to her young daughter, the defendant, Kenneth G. Hamilton, was charged by complaint and subsequently convicted by a jury of threatening to commit a crime, in violation of G. L. c. 275, § 2,

and intimidating a witness, in violation of G. L. c. 268, § 13B. For the reasons that follow, we affirm the defendant's conviction of threatening to commit a crime, and vacate his conviction of witness intimidation. We also conclude that the defendant's other challenges to his convictions do not entitle him to relief.[2]

1. *Background.* The evidence at trial would have warranted the jury in finding the following facts. In February of 2007 in the Cambridge District Court, the defendant was convicted of assault and battery on a person over sixty years old, assault and battery on a police officer, and disorderly conduct; he was sentenced to probation on all three convictions. He signed a probation contract on February 28, 2007. He violated the terms of his probation soon thereafter, and at a final probation surrender hearing on March 28, 2007, the probation officer assigned to supervise the defendant (probation officer), recommended that the defendant's probation be revoked and that he be committed to a one-year sentence in a house of correction. The judge found the defendant in violation, revoked his probation, and adopted the probation officer's sentencing recommendation. He sentenced the defendant to one year accordingly.

On January 3, 2008, after his release, the defendant left a message on the probation officer's voicemail at her office. The message stated in part:

> "[T]his is Kenneth Hamilton. I'm giving you a call because back in March, you violated me on probation and I was put to jail . . . and I was released on December 21. On my return, I noticed that you had cashed a check that I had written out for [ninety dollars] on March 7. At that time . . . the judge . . . waived all my fees because I was going to the house of correction. I'm calling because I spoke to the clerk's office and I informed them of this and I want my [ninety dollars] returned to me and, you know, I'd really love to say I thank you for sending me to where I was, you know, on February 28 . . . you actually brought your daughter into the court house so I want to thank you for sending me where I was because as you know, there

---

[2]We acknowledge the amicus brief of the Committee for Public Counsel Services in support of the defendant's position on the witness intimidation statute.

are very much predators there and I'm not a predator but I was able to talk about your beautiful daughter. Anyway, have a wonderful evening, okay?"

The probation officer understood the defendant to have made a threat to cause harm to her daughter in a physical or sexual manner. She was "upset," "worried," and "concerned for the safety of her daughter," in light of the defendant's history, and she acted with "motherly instinct" in deciding to contact the police. She believed that the defendant had the ability to cause a "predator," even though presently confined at a house of correction, to harm her daughter on such an individual's release. Before this incident, she had believed her office was a safe place for her children to visit, but after the incident she stopped bringing them to work with her.

On January 9, 2008, a criminal complaint issued against the defendant in the Cambridge District Court.[3] Prior to trial, the defendant moved to dismiss the witness intimidation count of the complaint on the grounds that the defendant's message made no direct threat against the probation officer, and there was no criminal investigation or criminal proceeding pending at the time he left the message. A judge in the District Court (motion judge) denied the motion. With respect to the count of the complaint alleging a threat to commit a crime, the defendant filed a motion to compel the Commonwealth to specify the crime the defendant was alleged to have threatened to commit[4]; the Commonwealth replied that the defendant threatened the probation officer with the sexual molestation of her daughter.

At trial, the Commonwealth presented the testimony of the police detective who had investigated the case and of the probation officer, and a copy of the recorded voicemail message was entered in evidence; the defendant presented his case through cross-examination and argument. At the close of the Commonwealth's case, the trial judge denied the defendant's motion

---

[3]On the defendant's motion the case was transferred to the Somerville District Court. The probation officer in question worked in the Cambridge District Court.

[4]The first count of the complaint alleged that the defendant "[o]n 01/03/2008 did threaten to commit a crime against the person or property of another, to wit: bodily harm, in violation of G. L. c. 275, § 2."

for a required finding of not guilty on both charges, and the jury found him guilty of both.

2. *Threatening to commit a crime.* The defendant bases his claim that the evidence was insufficient to sustain his conviction of threatening to commit a crime under G. L. c. 275, § 2, on the premise that for a valid conviction, the target of the threat must be the same person as the intended target of the threatened crime. In this regard, he argues that the only target of the threatened crime in this case was not the probation officer but her daughter, and that the Commonwealth therefore incorrectly designated the probation officer as the victim in the complaint and throughout trial. He further contends that while one may commit the crime of threatening by conveying a threat to a third-party intermediary with the intent that the threat will be communicated to the actual target, the evidence offered by the Commonwealth at trial was insufficient for a jury to find that the defendant intended that the alleged threat in the voice-mail message reach the daughter. Accordingly, he asserts, the Commonwealth failed to provide the evidence necessary to support a conviction.

In reviewing a denial of a motion for a required finding of not guilty, we consider "whether the Commonwealth produced enough evidence, taken in the light most favorable to the Commonwealth, to satisfy any rational trier of fact beyond a reasonable doubt that each element of the crime was present." *Commonwealth* v. *Hilton*, 398 Mass. 63, 64 (1986), citing *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). We begin with the statute defining the offense of threatening to commit a crime. General Laws c. 275, § 2 (§ 2), provides:

> "If complaint is made to any such court[5] or justice that a person has *threatened to commit a crime against the person or property of another*, such court or justice shall examine the complainant and any witnesses who may be produced, on oath, reduce the complaint to writing and cause it to be subscribed by the complainant" (emphasis added).

"The elements of threatening a crime include an expression

---

[5] "[S]uch court" refers to this court, the Superior Court, and the District Court. See G. L. c. 275, § 1.

of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat." *Commonwealth* v. *Sholley*, 432 Mass. 721, 724-725 (2000), quoting *Commonwealth* v. *Robicheau*, 421 Mass. 176, 183 (1995). Accord *Commonwealth* v. *Milo M.*, 433 Mass. 149, 151 (2001). In many cases, including the three just cited, the Commonwealth alleges the victim is both the target of the communicated threat and the target of the threatened crime. The Appeals Court has concluded in several cases that a threat may be communicated to an intended target by way of a third-party intermediary, but only where it is shown that the defendant intended the threat to reach the target. See *Commonwealth* v. *Maiden*, 61 Mass. App. Ct. 433, 434 (2004) (although bystander rather than defendant relayed threat to target, evidence showed defendant intended it to be heard by target, or reasonably should have known it would be conveyed to her); *Commonwealth* v. *Meier*, 56 Mass. App. Ct. 278, 282 (2002) (defendant inferrably intended that intermediary communicate threat). Contrast *Commonwealth* v. *Furst*, 56 Mass. App. Ct. 283, 284-285 (2002) (evidence of threatening to commit crime insufficient where defendant intended that third-party intermediary assist in murder plans, not that he communicate murder threat to intended victim); *Commonwealth* v. *Troy T.*, 54 Mass. App. Ct. 520, 524-528 (2002) (no intent to communicate threat where intermediary merely overheard statements not intended for alleged victim). However, this line of cases is factually distinguishable from the present case, in which the Commonwealth's theory was that the probation officer was the direct target of the threat, and not an intermediary. The issue whether the recipient of the threat must always be the victim of the threatened crime is thus a matter of first impression for this court.[6]

By its terms, the language used in § 2 requires a threat (against

---

[6]In dictum in *Commonwealth* v. *Kerns*, 449 Mass. 641 (2007), this court stated that the threat element of G. L. c. 275, § 2, "has been interpreted to *require* that the communication [of the threat] be made to (or be intended to reach) the person who is the intended target of the threatened crime" (emphasis added). *Id.* at 653, citing *Commonwealth* v. *Maiden*, 61 Mass. App. Ct. 433, 434 (2004), and cases cited. However, the defendant in *Kerns* was not charged with violating G. L. c. 275, § 2 (§ 2), see *Commonwealth* v. *Kerns*, *supra* at 642, and the Appeals Court cases cited in *Kerns*, which are described briefly

someone) of a crime (against the person or property of another), but does not state that the threat be issued against the intended crime victim. When the Legislature wishes to require an identity between the target of the threat and the target of the threatened crime, it knows how to accomplish this result. Compare § 2 (crime committed where "a person has threatened to commit a crime against the person or property of another"), with G. L. c. 265, § 43 (crime committed where person "willfully and maliciously engages in a knowing pattern of conduct . . . directed at a specific person which seriously alarms or annoys that person"). Because the Legislature has chosen, in § 2, *not* to specify that there be identity between the target of the threat and the target of the threatened crime in § 2, we interpret the statute accordingly, and conclude that they need not be the same person.[7]

This construction is consistent with the court's interpretation of similar language in G. L. c. 265, § 25, a statute defining the crime of attempted extortion.[8] That statute provides in relevant part that "[w]hoever . . . maliciously threatens to accuse another of a crime or offence, or . . . maliciously *threatens an injury to the person or property of another* . . . with intent thereby to

in the text immediately above, simply make the point that a threat may be communicated indirectly to the intended threat target — not that the target of the threat must also be the target of the threatened crime.

In memoranda and orders issued pursuant to its rule 1:28, the Appeals Court implicitly has assumed that a person might be threatened with a crime against another, typically a family member. See, e.g., *Commonwealth* v. *Gega*, 77 Mass. App. Ct. 1121 (2010) (communications, including electronic mail message stating, "At the end your nice children will pay," threatened victim and family); *Commonwealth* v. *Dupont*, 58 Mass. App. Ct. 1111 (2003) (threat adequately communicated where victim "heard the threat and was the intended recipient of a threat to commit a crime against his family").

[7] A recurring issue that has arisen in connection with § 2 is whether, in criminalizing threats, the statute may encroach on constitutionally protected freedom of speech. See *Robinson* v. *Bradley*, 300 F. Supp. 665, 668-669 (D. Mass. 1969). See also *Commonwealth* v. *Sholley*, 432 Mass. 721, 726-727 (2000). The guarantee against criminal punishment of trivial threats that constitute protected speech comes not from defining the victim as the threat recipient, but by requiring that the threatened act constitute a crime, and by requiring that the Commonwealth show the defendant had an ability to follow through on the threat in circumstances that would justify apprehension on the part of the threat recipient. See *id.* at 727.

[8] Both § 2 and G. L. c. 265, § 25, are statutes of lengthy pedigree. See Rev. St. (1836) c. 134, § 2; Rev. St. (1836) c. 125, § 17.

extort money or any pecuniary advantage . . . shall be punished" (emphasis supplied).[9] In *Commonwealth* v. *Snow*, 269 Mass. 598 (1930), this court held that a person who attempts to extort money from one person by threatening to injure a different person may be found guilty of attempted extortion under G. L. c. 265, § 25. *Id.* at 600-602. In reaching this result, the court rejected the defendant's contention that "under G. L. c. 265, § 25, it is not a crime maliciously to threaten one person with injury to another with intent to extort money from the person threatened." *Id.* at 600. The court reasoned:

> "This [phrase in the statute, quoted above] contains no express or implied limitation as to the person to whom the threat is made, or as to the person from whom it is intended to extort money or other pecuniary advantage. According to the natural meaning and the grammatical construction of this part of the section, the threat may be made to anybody — the person to be accused or injured, the person from whom it is intended to extort the money or other pecuniary advantage, or a different person."

*Id.* at 601-602. See *United States* v. *Mavroules*, 813 F. Supp. 115, 120 (D. Mass. 1993), and cases cited (violation of G. L. c. 265, § 25, is shown by [1] malicious threat [2] made to named person [3] of personal injury to some one [4] with intent to extort money, but " 'named person' to whom the threat is made and the 'some one' to be injured need not be the same person").

Turning back to § 2, there was evidence presented at trial in this case to support a finding by the jury that the defendant meant to express to the probation officer his intention to commit a crime against her daughter, that he had the ability to commit such a crime, and that the circumstances reasonably warranted apprehension on the part of the probation officer. See *Commonwealth* v. *Sholley*, 432 Mass. at 724-725. In particular,

[9]Compare § 2 ("threatened to commit a crime against the person or property of another"), with the phrase in G. L. c. 265, § 25, italicized in the text.

General Laws c. 265, § 25, was revised in 1932 and again in 1953. See St. 1932, c. 211; St. 1953, c. 294. Neither amendment affected the portion of the statute that is quoted in the text, and that was at issue in *Commonwealth* v. *Snow*, 269 Mass. 598, 601-602 (1930).

the voicemail message, in context, suggests that the defendant intended to exploit what the probation officer called her "motherly instinct" in order to instill in her the fear that her daughter would become the victim of a crime. The jury heard the defendant say on the recording that he had talked to "predators" while incarcerated. The jury also heard the probation officer testify that she feared that imprisoned sexual predators, once released, might be able to harm her daughter. The jury could properly assess whether that apprehension, including the interpretation of predators as sexual predators, was reasonable. We conclude, in other words, that the evidence was sufficient for the jury to find that the defendant threatened the probation officer within the meaning of § 2. No evidence suggested the defendant expected or intended that the daughter would hear of the threat, but this absence is not a failure of evidence because, as the complaint properly charged, the probation officer, not her daughter, was the intended target of the threat.

It is true that the judge's instructions to the jury did not make clear that the alleged victim of the threat and of the threatened crime need not be the same person; fairly read, they indicate the opposite. The judge stated:

> "[T]he Commonwealth must prove three things beyond a reasonable doubt. First, that the defendant communicated to the alleged victim, that's [the probation officer] here, an intent to injure her person or property, now or in the future. Second, that the injury that was threatened, if carried out, would constitute a crime."[10]

While this instruction may have caused some confusion for the jury, we do not think it was detrimental to the defendant. The two elements laid out by the judge in this instruction were that (1) the defendant communicate an intent to injure the probation officer, the alleged victim; and (2) the defendant threaten her with an injury that, if inflicted, would qualify as a crime. The effect of the judge's description of the first element was to place a burden on the Commonwealth not only to prove that the

---

[10]The judge told the jury that the third element the Commonwealth must prove was that, in the circumstances, the probation officer reasonably could have feared the defendant had the intention and ability to carry out the threat.

defendant communicated a threat to the probation officer, but also that in so doing, he intended to inflict an injury to her or her property. Consistent with these instructions, the prosecutor argued in closing that the defendant communicated to the probation officer an intent to harm her emotionally by causing her daughter to be the victim of an attack by "predators" — that is, that the daughter would be the victim of a crime.

Following the judge's instructions, in order to find the defendant guilty, the jury in effect had to find that the probation officer was threatened with some type of harm or injury to herself distinct from the allegedly threatened crime against the person of her daughter. An intent to inflict a separate injury on the threat recipient is not required by § 2. The defendant, however, was not prejudiced, because the extra burden imposed by these instructions fell on the Commonwealth. There was no error requiring reversal of the defendant's conviction of threatening to commit a crime.

3. *Intimidation of a probation officer.* The defendant was also convicted of violating G. L. c. 268, § 13B, appearing in St. 2006, c. 48, § 3 (§ 13B).[11] Section 13B provides in pertinent part:

> "Whoever, directly or indirectly, willfully (*a*) threatens . . . or (*c*) . . . intimidates or harasses another person who is: . . . (iii) a . . . probation officer . . . with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby with a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type shall be punished . . . ."

As he did in his motion to dismiss filed before trial, the defendant argues that § 13B requires that the threatening, intimidating, or harassing conduct proscribed by the statute be intended to interfere in some way with an open or ongoing criminal proceeding. The Commonwealth, however, takes the position that § 13B clearly reaches threatening or intimidating

---

[11]General Laws c. 268, § 13B (§ 13B), has since been amended, effective November 4, 2010. See St. 2010, c. 256, § 120. See note 16, *infra*. Section 13B, as appearing in St. 2006, c. 48, § 3, is applicable to this case, and therefore we focus on its language.

conduct intended by the actor to retaliate against or "punish" a probation officer on account of even past criminal proceedings. We conclude that the statute is ambiguous.

Section 13B criminalizes intimidating behavior intended to "impede, obstruct, delay, harm, punish *or otherwise interfere thereby with*" certain types of criminal proceedings (emphasis added). As a matter of statutory construction, "ordinarily the coupling of words denotes an intention that they should be understood in the same general sense." 2A N.J. Singer, Sutherland Statutory Construction § 47:16, at 352-353 (7th ed. 2007) (describing interpretive maxim of noscitur a sociis, i.e., "it is known by its associates"). "Otherwise," in its ordinary dictionary sense, means "in a different way or manner." Webster's Third New Int'l Dictionary 1598 (1993). To "otherwise interfere thereby with" therefore means to "interfere" but "in a different way or manner"; this meaning suggests that the preceding words in the statute — to "impede, obstruct, delay, harm, [or] punish" — must all be different ways of interfering with a criminal proceeding.[12] As applied to a "proceeding," the earlier listed verbs — "impede, obstruct, [and] delay" — as well as the later verb phrase, "otherwise interfere with," would seem to apply meaningfully only to proceedings that have not yet concluded.[13] However, "harm"[14] and "punish"[15] do not normally suggest possible types of interference with a "proceeding," whether

---

[12]Along similar lines, under the doctrine of ejusdem generis, "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." 2A N.J. Singer, Sutherland Statutory Construction § 47:17, at 358-360 (7th ed. 2007). The implication is that a list of specific words followed by a more general word or phrase may be the Legislature's means of describing a class of objects (or, as in this case, actions). However, as we discuss below, the history of the statute brings this presumption into some doubt.

[13]We cannot see how, logically, one could "impede," "obstruct," "delay," or, more generally, "otherwise interfere with" a proceeding that already has ended.

[14]"Harm," as a verb, means "to cause hurt or damage to: injure." Webster's Third New Int'l Dictionary 1034 (1993).

[15]"Punish" in its primary sense means "to impose a penalty (as of pain, suffering, shame, strict restraint, or loss) upon some fault, offense, or violation: . . . to afflict (a person) with such a penalty for an offense; . . . to inflict a penalty for (an offense) in retribution or retaliation . . . to deal with roughly or harshly . . . to inflict injury or loss upon: . . . hurt." Webster's Third New Int'l Dictionary, *supra* at 1843.

concluded or not. Indeed, as applied in that context, the words simply do not make much sense: it is unclear to us what it would mean to "harm" or "punish" a criminal proceeding. In light of this lack of clarity, we turn to the history of the statute. See *81 Spooner Rd. LLC* v. *Brookline,* 452 Mass. 109, 115 (2008) (where statute unclear, appropriate to look to statute's prior versions, development, and progression through Legislature).

The language of § 13B that we have quoted here dates from revisions intended to reduce gang violence. See St. 2006, c. 48, preamble. The previous version of the section provided in relevant part:

> "*[1]* Whoever, directly or indirectly, willfully endeavors by means of a gift, offer or promise of anything of value, or by misrepresentation, intimidation, force or express or implied threats of force to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial, grand jury or other criminal proceeding, or with any person furnishing information to a criminal investigator relating to a violation of a criminal statute of the commonwealth, and *[2]* whoever injures any person or damages his property on account of the giving of such information to a criminal investigator or on account of testimony given at a trial, grand jury or other criminal proceeding, shall be punished . . . ."

G. L. c. 268, § 13B, as amended through St. 1996, c. 393, §§ 2-4.

Thus, prior to the 2006 amendment, § 13B separately criminalized two discrete types of misconduct: "(1) interference, actual *or* threatened, with a witness or juror during the pendency of a criminal proceeding, and (2) physical injury to person or property undertaken in retaliation for testimony given at a criminal proceeding, regardless of when such acts are carried out" (emphasis in original). *Commonwealth* v. *Cathy C.,* 64 Mass. App. Ct. 471, 472 (2005). In this version of § 13B, it is clear from the sentence structure that the objects of the verbs, "influence, impede, obstruct, delay or otherwise interfere with," were "any witness or juror in any stage of a . . . criminal proceeding, or . . . any person furnishing information to a criminal investigator." This language has been interpreted to

apply solely in the context of an ongoing criminal proceeding. See, e.g., *Commonwealth* v. *Robinson*, 444 Mass. 102, 110-111 (2005) (witness intimidation conviction upheld where show cause hearing had concluded but criminal proceedings were ongoing); *Commonwealth* v. *Cathy C.*, *supra* at 472-473.

As revised in 2006, § 13B applies to one who threatens, bribes, misleads, intimidates, or harasses anyone belonging to any of five categories of protected persons "with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby with a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type." § 13B (1) (c) (v).[16] Four of the verbs in the intent clause — "impede, obstruct, delay," or "otherwise interfere thereby with" — were transcribed directly

---

[16]The 2006 revision of § 13B evolved from bills passed to be engrossed in both houses of the Legislature. See 2005 Senate Doc. No. 2242, § 10; 2005 House Doc. No. 4626, § 3. Although there were material differences in these two bills that related to other provisions, both bills proposed a version of § 13B providing as follows:

> "Whoever . . . willfully . . . threatens, attempts, or causes physical injury, emotional injury, economic injury, or property damage; [offers a bribe; or] misleads, intimidates, or harasses *with the intent to influence, impede, obstruct, delay, harm, punish, or otherwise interfere with . . . [a] criminal proceeding of any type; or [a member of certain classes of people including a] probation officer . . . shall be punished . . ."* (emphasis added).

In other words, the proposed statute would have criminalized certain actions taken with an "intent to influence, impede, obstruct, delay, harm, punish, or otherwise interfere with" certain proceedings *or* certain classes of people. During the reconciliation process, for reasons that are not apparent, the provision was amended to read:

> "Whoever . . . willfully . . . threatens, or attempts or causes physical injury, emotional injury, economic injury, or property damage to; [offers a bribe to; or] misleads, intimidates or harasses another person who is: [a member of certain classes of people including a] probation officer . . . *with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby with a . . . criminal proceeding of any type* shall be punished . . ." (emphasis added).

2006 Senate J. 1497-1498. After this change, the proposed section would criminalize certain behavior against certain people with the intent to "impede, obstruct, delay, harm, punish or otherwise interfere thereby with" certain *proceedings* but not *persons. Id.* This amended version was enacted into law. See § 13B, as appearing in St. 2006, c. 48, § 3.

In 2009, this court interpreted § 13B as directed at proceedings within the

from the portion of the earlier version of § 13B, previously quoted, that related to interference with a witness or juror in a pending proceeding. Two new verbs — "harm" and "punish" — were added. However, in terms of syntax, the object in the clause containing all six of these verbs is no longer a class of persons connected to criminal proceedings but only the proceedings themselves. And the second type of misconduct covered in the earlier version, concerning retaliatory attacks against persons for past participation in a criminal proceeding or investigation, disappeared from the section altogether. In other words, whether intentionally or not, the Legislature effectively removed from § 13B the provisions that penalized retaliation for testimony or conduct that related to past proceedings.

The history of § 13B suggests that in revising it in 2006, the Legislature may have intended to combine the two previously discrete forms of misconduct as well as to broaden the classes of persons protected and the types of behavior to be criminally sanctioned. Along these lines, the Commonwealth argues that the section should be read to proscribe certain conduct specifically intended to "impede," "obstruct," "delay," "harm," or "punish" certain protected persons, and, separately, conduct intended to "otherwise interfere thereby with" a criminal proceeding. But, even if we can guess at the legislative intent, as a matter of statutory construction, we cannot supply words the Legislature chose not to include. See *Brockton Edison Co.* v. *Commissioner of Corps. & Taxation*, 319 Mass. 406, 411 (1946), quoting *Ellis* v. *Paige*, 1 Pick. 43, 45 (1822) ("It is a well settled rule, that when any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled"). See generally *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 n.3 (1986) (function of court to construe statute as written and not to read into it provisions Legislature did not put there). We also will not adopt a reading of § 13B that renders the word "otherwise" entirely superfluous.

criminal justice system only. See *Commonwealth* v. *Gallant*, 453 Mass. 535, 542 (2009). Presumably in response, the Legislature amended § 13B in 2010, expanding the types of "proceeding" covered by the statute to include a variety of civil and juvenile proceedings. See St. 2010, c. 256, § 120. See note 11, *supra.*

See *Commonwealth* v. *Velasquez*, 76 Mass. App. Ct. 697, 700 (2010).[17] See also *Commonwealth* v. *Millican*, 449 Mass. 298, 300 (2007), quoting *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967) ("None of the words of a statute is to be regarded as superfluous").

At best, as indicated at the outset of our discussion, the meaning of the verbs "harm" and "punish" in § 13B, as applied to a proceeding, is ambiguous, and we cannot interpret an ambiguous statute in a manner that disadvantages a criminal defendant. See *Commonwealth* v. *Burton*, 450 Mass. 55, 59-60 (2007) (where court is "unable to determine" what Legislature intended by amendment, "uncertainties in criminal statutes" may not be resolved in Commonwealth's favor). See also *Commonwealth* v. *Rahim*, 441 Mass. 273, 284 n.19 (2004), quoting *Commonwealth* v. *Carrion*, 431 Mass. 44, 45-46 (2000) (rule of lenity requires that defendant receive benefit of ambiguous statutory language). Cf. *Commonwealth* v. *Spearin*, 446 Mass. 599, 604 (2006) ("Criminal statutes, of course, are to be strictly construed").[18] We invite the Legislature to clarify G. L. c. 268, § 13B, particularly as it relates to retaliatory conduct. In light of the ambiguity in the version of § 13B applicable here, we

---

[17]*Commonwealth* v. *Velasquez*, 76 Mass. App. Ct. 697 (2010), concerned a conviction of the crime of leaving the scene "after knowingly colliding with or otherwise causing injury to any other vehicle or property" in violation of G. L. c. 90, § 24 (2) (*a*). *Id.* at 699 & n.3. The Commonwealth urged the Appeals Court to interpret the quoted statutory language to mean that it was only required to prove "that a collision occurred and that if a collision occurred, there need be no proof that the collision caused any damage" to a vehicle or property. *Id.* at 699. The Appeals Court rejected that interpretation as rendering "otherwise" superfluous; the Legislature's use of "or otherwise causing injury" meant, in context, that "colliding with" was a means of "causing injury"; a collision without proof of injury to another vehicle or property therefore was not within the statute. *Id.* at 700. In this case, the Commonwealth would have us interpret "impede, obstruct, delay, harm, [or] punish" as disconnected from "otherwise interfere thereby with . . . a criminal proceeding," such that a defendant could harm a person in violation of the statute without a showing that he intended in some manner to interfere thereby with a proceeding. As in the *Velasquez* case, such a construction renders the word "otherwise" meaningless.

[18]We note that the conduct at issue in this case would not have been criminal under § 13B, as amended through St. 1996, c. 393, §§ 2-4, as it did not involve actual, as opposed to threatened, personal injury.

are constrained by the rule of lenity to reverse the defendant's conviction of violating it.

4. *Other claims.* The defendant points to four other errors that either alone or in combination require reversal of his convictions. We find no error that warrants reversal.

First, the defendant argues that his motion in limine requesting preclusion of prior bad acts evidence should have been granted. The judge denied the defendant's motion after listening to oral arguments on the relevance of the prior bad acts as well as the potential prejudice to the defendant. The judge permitted the Commonwealth to identify the defendant's prior convictions but excluded evidence of the underlying facts in light of their "inflammatory value." In her testimony, the probation officer identified the convictions that gave rise to the defendant's probationary sentence. The judge later instructed the jurors that they could consider the prior convictions "only on the limited issue" of "what the defendant's intent was in making this call, and whether the defendant had the ability or intention to carry out any threats that . . . you may find he made, if you find them." But in response to a question from the jury, the judge later clarified:

> "What the Commonwealth needs to prove is that a reasonable person in the position of [the probation officer], would be reasonable in the belief that the defendant has the ability to carry out the threat. It's not proper to use the prior conduct of the defendant to show his propensity to commit an act. . . . It is, however . . . permissible to use that evidence in determining whether or not [the probation officer] had a reasonable belief that the defendant had the intention and ability to carry out any threat that may have been made. So her knowledge of the prior conviction is what's important."

The defendant charges error in the admission of the prior convictions, and claims the judge's instructions compounded the error by encouraging jurors to consider his propensity to commit crimes.

The question is close. "Evidence of a defendant's prior or subsequent bad acts is inadmissible to demonstrate bad character or propensity to commit the crime charged." *Commonwealth* v.

*Walker*, 442 Mass. 185, 202 (2004), citing *Commonwealth* v. *Barrett*, 418 Mass. 788, 793 (1994), and cases cited. Nevertheless, as noted in Part 2, *supra* at 427, "an ability to [inflict a threatened crime] in circumstances that would justify apprehension on the part of the recipient of the threat" is an element of threatening to commit a crime. See *Commonwealth* v. *Sholley*, 432 Mass. at 725. The reasonableness of the probation officer's fear in the circumstances of the defendant's statement was therefore directly at issue. In the circumstances of this case, where the probation officer's entire knowledge of and relationship with the defendant arose from the fact that he had committed criminal offenses and was placed on probation as a consequence, the officer's knowledge of the defendant's prior convictions could be deemed relevant to a determination whether her fear was indeed reasonable. Cf. *Commonwealth* v. *McCowen*, 458 Mass. 461, 477-480 (2010) (trial judge permissibly admitted evidence concerning defendant's prior criminal convictions and abuse protective orders against him where evidence was relevant to understanding of police officer's reasoning for seeking arrest warrant against defendant; limiting instruction given).

We acknowledge that the line between considering prior convictions as evidence of a defendant's propensity for further criminal action, and considering such evidence on the question of a person's reasonable apprehension of a defendant's capacity to carry out a threatened crime, is indeed a thin one; the need for a judge to weigh the probative value of the evidence against its prejudicial potential is great. See Mass. G. Evid. § 403 (2011). Here, the judge appeared to follow such a course: in an effort to limit the prejudice to the defendant, he restricted the evidence to the fact of the defendant's convictions, and did not permit the Commonwealth to introduce evidence concerning the underlying crimes. The judge's initial instruction to the jury was erroneous, because it appeared to permit the jury to use the fact of the defendant's prior convictions to demonstrate capability and propensity to carry out his alleged threat. However, the judge's specific clarifying instruction, given in response to the jury's question, properly directed the jury to limit their use of the evidence to the probation officer's reasonable beliefs about the defendant's ability to carry out threats, not his propensity to commit crimes. Cf. *Commonwealth* v. *Cormier*, 427 Mass. 446,

452-453 (1998) (reversal not required where judge expressly corrected error in charge). In the end, we find that no substantial risk of a miscarriage of justice occurred.

Second, the defendant argues the probation officer was improperly permitted to testify concerning the defendant's prior convictions in the absence of a certified copy of them. See *Commonwealth* v. *Puleio*, 394 Mass. 101, 104 (1985) (conviction intended to impeach witness must be proved by court record or certified copy). The rule in the *Puleio* case, however, does not apply here. The prior convictions in this case were not intended to impeach a witness, but, as just discussed, went to the issue whether the defendant's threat occurred "in circumstances that would justify apprehension." *Commonwealth* v. *Sholley*, *supra* at 725.

The defendant's third claim is that both witnesses at trial, the investigating detective and the probation officer, improperly gave an opinion as to the ultimate issue of the defendant's intent. The defendant contends that it was solely the jury's province as fact finders to determine whether the defendant intended to threaten the probation officer or her daughter. We agree the detective should not have been allowed to testify that he "interpreted" the message to be a "threat."[19] No witness, including a police witness, may testify as to a defendant's guilt or innocence. See *Commonwealth* v. *Hesketh*, 386 Mass. 153, 162 (1982) ("To allow the police to testify as to their suspicions [as to a defendant's guilt] would seriously undermine the constitutional protections afforded to all citizens"). But even though the testimony improperly expressed an opinion as to the defendant's intent, in the circumstances, we conclude the error carried with it no substantial risk of miscarriage of justice. The detective's opinion was implicit in his decision to move forward with the investigation, and the jury would have inferred the detective interpreted the message as a threat even if he never expressly said so. In the circumstances, we conclude that the improper testimony would not have materially influenced the verdict.

---

[19]The police detective, when asked how he interpreted the tape recording, responded: "I interpreted it that there was a direct threat to [the probation officer's] daughter." When asked whether he had interpreted the tone and the contents of the message "as a police officer to be a threat," he answered, "Yes." The defendant did not object to this testimony at trial.

See *Commonwealth* v. *Randolph,* 438 Mass. 290, 297-298 (2002) (under substantial risk standard, relief appropriate only where, among other factors, defendant was prejudiced and error materially influenced verdict).

With regard to the defendant's related argument concerning the probation officer's testimony, it is true that the probation officer at one point testified that she knew what the defendant's intent was. But the statement was made in response to a question put to her by defense counsel on recross-examination, and it did not concern the defendant's intent to threaten her but rather his intent in contacting her, supposedly, to complain about the probation fees. The probation officer answered, "No one knows what his intentions were but himself," to the follow-up question.[20] Especially in light of this direct disavowal of knowledge of the defendant's intent, we discern no error.[21]

Last, the defendant argues that he was prejudiced by the probation officer carrying a file into the court room during trial and handing the file to the court officer.[22] The defendant asserts that the file served only as a "prop" intended to suggest that the defendant was a "bad actor." However, the defendant agrees the jury had no knowledge of what was in the file, and it was not opened or referred to by anyone during the probation officer's testimony. The argument has no merit.

5. *Conclusion.* With respect to the first count of the complaint, threat to commit a crime in violation of G. L. c. 275, § 2, the judgment of conviction is affirmed. With respect to the second

---

[20]On recross-examination, in response to the probation officer's testimony that the fee was only an "excuse" for telephoning, defense counsel asked, "You don't know what was going on in his head, do you?" The probation officer replied, "No," but then said, "I believe I know what his intention is." Defense counsel then asked, "But you don't know what his intentions were, do you?," to which the probation officer replied, "No one knows what his intentions were but himself."

[21]The probation officer also testified she interpreted the message as a threat, but her testimony clearly related to her apprehension and the reasonableness of that apprehension; as such it was not improper opinion testimony.

[22]The record suggests that the probation officer brought her own file concerning the defendant with her to court. Defense counsel asked that she leave it on the table, as opposed to bringing it with her onto the witness stand. The judge decided that the probation officer should give the file to the court officer, such that documents in it would be available to be used to refresh her memory, but only as needed. In fact, no documents were used in this or any other manner.

count, intimidation of a witness in violation of G. L. c. 268, § 13B, for the reasons explained in Part 3, the judgment of conviction is reversed, and the case remanded for entry of a required finding of not guilty.

*So ordered.*