NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-277

COMMONWEALTH

vs.

GREGORY OSTIGUY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2018, the defendant was indicted on two counts of threatening to commit a crime, G. L. c. 275, § 2, and two counts of intimidation of a witness, G. L. c. 268, § 13B.  All four indictments stemmed from statements the defendant made in voicemail messages to the two victims, each of whom was or had previously been the defendant's supervising probation officer. The defendant was convicted of all four offenses after a jury trial in the Superior Court, and he filed a timely notice of appeal from those convictions.  Because, as to the indictments for threatening to commit a crime, the jury were not given the guidance required under Counterman v. Colorado, 600 U.S. 66, 79 (2023), we vacate the judgments on the defendant's threats

convictions and set aside the jury's verdicts on those indictments; otherwise, we affirm.

Background. The defendant's appeal includes a challenge to the sufficiency of the evidence supporting his convictions. Thus, we briefly summarize the facts in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), reserving certain details for later discussion.

In July 2018, the defendant was subject to supervised pretrial conditions of release in the District Court, which included restrictions on his ability to have contact with his pet dog. He was supervised by a probation officer who knew him and with whom he had previously had a good working relationship.

On July 30, 2018, the probation officer was unexpectedly called into the courtroom to attend a hearing on the defendant's efforts to regain possession of his dog. The hearing did not go as the defendant hoped, and he became frustrated. The defendant described himself as "pissed off," made statements in open court about his ability to carry out "biological warfare" and use "explosives," and then abruptly left the building.

Later that day, the defendant left voicemail messages for his probation officer and the assistant chief probation officer in the same court. The message to the probation officer was,

> "You're very good. So you're hoping you have a place to come to work to. Ha. And you know I can take care of it.

And just like jail, you want to try to do a song.  As big as you are, I'm not worried.  But I do respect unemployment.  It's a decent gesture, I can grant you, for stealing my dog.  Thank you.  Thank you very much."

In his message to the assistant chief, the defendant said,

"I'm giving you a head's up, Dave,[1] about biological warfare.  Not everything has to be flash and bang, or armor-piercing, or shot through a bow.  Or chemically induced.  [You] people do not understand the field you are shitting on, and I'm going to tell you.  You've been warned.  Biological warfare is nothing.  It is easy, in my book. . . .  My life is counterterrorism training."

Both the probation officer and the assistant chief viewed the defendant's messages as threats and were fearful as a result.  They reported the defendant's messages to the police and the court, and the defendant was ultimately arrested, indicted, and convicted, as we have noted.

Discussion.  1.  Counterman issues.  a.  Clairvoyance exception.  In Counterman, 600 U.S. at 72-73, -- a case decided while the defendant's appeal was pending -- the United States Supreme Court held that where an individual is criminally charged for making "true threats," the prosecution must prove that the defendant acted with at least reckless disregard for the threatening nature of the speech to avoid impermissibly chilling the speaker's First Amendment rights.  Although here,

---

[1] The assistant chief had previously supervised the defendant as a probation officer, and his family and the defendant's family knew each other personally.

the defendant did not raise a First Amendment objection to the jury instructions given at his trial, we agree with the defendant that the theory "was not sufficiently developed at the time of trial . . . to afford [him] a genuine opportunity to raise his claim," Commonwealth v. Guardado, 491 Mass. 666, 686, S.C., 493 Mass. 1 (2023), cert. denied, 144 S. Ct. 2683 (2024), quoting Commonwealth v. Rembiszewski, 391 Mass. 123, 126 (1984), and that the "clairvoyance exception" to our usual rule on waived claims therefore applies. Commonwealth v. Bookman, 492 Mass. 396, 401 (2023). Thus, to the extent that we discern error in the jury instructions as they relate to the defendant's subjective understanding of the threatening nature of his speech, we will vacate the convictions under G. L. c. 275, § 2, unless the error was harmless beyond a reasonable doubt. See Commonwealth v. Souza, 492 Mass. 615, 638-639 (2023).

b. Threats. At trial, the judge instructed the jury that, as to each indictment for threatening to commit a crime, the Commonwealth bore the burden of proving the following four elements beyond a reasonable doubt: (1) that the defendant expressed an intent to injure a person or property of another; (2) that the defendant intended his threat to be conveyed to a particular person; (3) that the threatened injury, if carried out, would constitute a crime; and (4) that the defendant made

4

the threat under circumstances that could reasonably cause the person to whom it was conveyed to fear that the defendant had both the intention and the ability to carry it out.  Although the instructions correctly stated the law as it stood at the time of trial, see, e.g., Commonwealth v. Sholley, 432 Mass. 721, 724-725 (2000), cert. denied, 532 U.S. 980 (2001), they did not require the jury to consider the defendant's subjective understanding of the threatening quality of his voicemail messages to the victims, and so they did not conform with the holding in Counterman, 600 U.S. at 79.  See Commonwealth v. Cruz, 495 Mass. 110, 114 (2024).

Moreover, we are not confident that the absence of an instruction on the defendant's subjective understanding was harmless beyond a reasonable doubt.  The defendant's mental state was a live issue at trial, and the jury may have reached a different conclusion if instructed as now required.[2]  We are not persuaded by the Commonwealth's contention, based on the judge's criminal responsibility instructions, that, by rejecting that defense, the jury necessarily found that the defendant knew and

_____

[2] The defendant also argues in his brief that Counterman entitled him to an instruction "addressing his diminished capacity" and ability to understand the threatening character of his messages.  The judge's final charge did include such an instruction, however.

5

understood that his conduct was wrong.  For example, the jury may well have found that the Commonwealth proved the defendant was not suffering from a mental disease or defect, in which case they would not have gone on to consider whether he appreciated the wrongfulness of his conduct.  Thus, because the defendant's convictions under G. L. c. 275, § 2, violated the First Amendment, and that violation was not harmless beyond a reasonable doubt, we vacate those convictions and set aside the verdicts on the corresponding indictments.[3]  See Cruz, 495 Mass. at 114, citing Counterman, 600 U.S. at 69.

c.  Witness intimidation.  The indictments against the defendant for intimidation under G. L. c. 268, § 13B, stemmed from the same conduct as that on which the indictments for threatening to commit a crime were based, and the holding of Counterman applies equally to them.  On this record, however, we are not persuaded that Counterman requires that the intimidation convictions be vacated.

The judge in this case instructed the jury, inter alia, that to convict the defendant of intimidation, the Commonwealth was required to prove beyond a reasonable doubt that the

---

[3] As to these convictions (and in contrast to his appeal from the convictions of intimidation), the defendant does not challenge the sufficiency of the Commonwealth's evidence.

6

defendant "willfully . . . threatened" a probation officer "with the specific intent . . . to punish . . . such [p]robation [o]fficer for participating in a criminal proceeding of any type."  On special verdict slips, the jury documented their determinations that the Commonwealth had proven intimidation on that theory as to both indictments under G. L. c. 268, § 13B. The jury were not otherwise instructed on the Commonwealth's obligation to prove the defendant's mens rea at the time he made the threats.

To the extent the judge erred in failing to instruct the jury more specifically in accordance with Counterman, we are persuaded that the error in this instance was harmless beyond a reasonable doubt.  This is because, at least as to the theory of the crimes on which the jury convicted the defendant, the judge's instructions were adequate to protect the defendant's First Amendment rights.  Given the ordinary meaning of the words "to punish,"[4] the effect of the judge's instructions was to require the Commonwealth to prove the defendant's subjective awareness of the threatening nature of his words.  See Counterman, 600 U.S. at 79; Cruz, 495 Mass. at 114.  The

---

[4] The Merriam-Webster Online dictionary defines "punish" as "to inflict injury on" or "to hurt."  Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/punish.

defendant could hardly have intended to punish the recipients of his voicemail messages if he were not at least aware "that others could regard [the] statements [in those messages] as threatening" when he made them (quotation and citation omitted). Counterman, supra.  See Cruz, supra.  We are therefore satisfied that, in this circumstance, the judge's instructions provided the First Amendment protections required under Counterman, and any error in the instructions was harmless beyond a reasonable doubt.[5]  Cf. Commonwealth v. Harris, 101 Mass. App. Ct. 308, 308-309 (2022) (constitutional error in jury instructions "was not . . . corrected by other language in the instructions," and thus was not harmless beyond reasonable doubt).

2.  Sufficiency of the evidence.  The defendant next contends that the evidence presented by the Commonwealth was insufficient to support his conviction of intimidation of the assistant chief probation officer, because it did not establish that the assistant chief had any role in the hearing that was the catalyst for the defendant's voicemail messages.  Drawing all reasonable inferences in the Commonwealth's favor to determine whether any rational trier of fact could have found

_____

[5] We express no opinion about the adequacy of the instructions on any other theory on which the defendant might have been convicted.

this element of the crime beyond a reasonable doubt, see Latimore, 378 Mass. at 677, we are not persuaded.

While there was no evidence to show that the assistant chief actually "participat[ed] in" the July 2018 hearing that preceded and precipitated the defendant's threatening voicemails, G. L. c. 268, § 13B (b), there was evidence from which the jury could have inferred that the defendant believed, albeit incorrectly, that he had done so.[6]  Cf. Commonwealth v. Wheeler, 102 Mass. App. Ct. 411, 415 (2023) (reversing defendant's convictions of intimidation of case specialist where Commonwealth presented "no evidence that the case specialist knew any information about [the defendant's court proceeding] at all").  Where the evidence was sufficient to establish that the defendant acted with the intent to punish the assistant chief for the part he reasonably believed the assistant chief played

---

[6] For example, based on the substance and timing of the defendant's messages for the probation officer and the assistant chief probation officer, the jury could have inferred the defendant knew that the assistant chief was the probation officer's supervisor.  Commonwealth v. Roy, 464 Mass. 818, 824 (2013) (permissible inference need only be reasonable and possible, it need not be necessary or inescapable); Commonwealth v. Ross, 92 Mass. App. Ct. 377, 378 (2017) (same).  On that basis, the jury could have likewise inferred that the defendant thought the assistant chief had a role in the July 2018 proceedings.  See Roy, supra; Ross, supra.

in his hearing, we conclude that it was also sufficient to support the defendant's conviction under G. L. c. 268, § 13B.

3. _Other evidentiary challenges_. We review the defendant's remaining challenges, which are to the judge's admission of certain evidence, for an abuse of discretion. See Commonwealth v. Ng, 491 Mass. 247, 257 (2023). If there was an abuse of discretion, we review any preserved challenge under a prejudicial error standard, see Commonwealth v. Niemic, 483 Mass. 571, 598 (2019); if the defendant did not preserve an objection, we review for a substantial risk of a miscarriage of justice. See Commonwealth v. McCoy, 456 Mass. 838, 845-846 (2010).

Assuming in this case that (1) the probation officer and the assistant chief probation officer should not have been permitted to testify to their opinions that the defendant's voicemail messages amounted to "threats," see Commonwealth v. Hamilton, 459 Mass. 422, 439 (2011), and (2) the defendant's objections to these opinions were preserved, we discern no prejudice to the defendant from the admission of those statements. Here, as in Hamilton, it would have been apparent to the jury from the victims' responses to the messages that they considered the messages to be threats. See id.

10

Although the evidence the defendant characterizes as "vouching" was also generally admissible to show that the voicemail messages caused their recipients apprehension, and to show that the recipients' responses were reasonable, see Hamilton, 459 Mass. at 426-427, the repetition of this kind of evidence comes close to impermissible "piling on." Even assuming that the defendant's objections on this basis were preserved, however, we again discern no prejudice from the repetition where the jury heard the transcripts of the messages verbatim, and so could make their own first-hand assessment of the seriousness of any threats contained in them, and the reasonableness of the victims' responses.

Finally, because we discern little purpose for the evidence elicited by the Commonwealth regarding the police and judicial response to the victims' reports of the threatening messages, other than to repeat those accusations and corroborate them, we agree with the defendant that this evidence should not have come in. See Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008) (testimony regarding "[t]he description of the investigative process" and "[t]he fact that the Commonwealth brought its resources to bear on this incident" is "unnecessary and irrelevant to the issue of the defendant's guilt, and is extremely prejudicial"). Like the trial judge, who sua sponte

11

intervened to limit this testimony, we see little relevance to this aspect of the Commonwealth's evidence.[7]  We are not, however, persuaded that a new trial is required where the responses the witnesses described were implicit in the fact that the defendant was charged and brought to trial.  See Commonwealth v. West, 487 Mass. 794, 807 (2021).

Conclusion.  The judgments of conviction for threatening to commit a crime are vacated, and the verdicts on those indictments are set aside.  The judgments of conviction for intimidation of a witness are affirmed.

So ordered.

By the Court (Massing, Hand & Smyth, JJ.[8]),

Clerk

Entered:  February 28, 2025.

---

[7] Moreover, even if the evidence was relevant to the defendant's criminal responsibility because it showed that the defendant was calm and appropriate at the time of his arrest, the repetition of the evidence increased its potential for unfair prejudice beyond its probative value.  See Mass. G. Evid. § 403 (2024).

[8] The panelists are listed in order of seniority.