NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-1283                                    Appeals Court

COMMONWEALTH  vs.  PAUL MUCKLE.

No. 14-P-1283.

Suffolk.     September 10, 2015. - October 3, 2016.

Present:  Green, Rubin, & Hanlon, JJ.


Intimidation of Witness.  Threatening.  Stalking.  District Court, Jurisdiction.  Boston Municipal Court.  Practice, Criminal, Duplicative convictions, Lesser included offense, Instructions to jury.


Complaint received and sworn to in the Central Division of the Boston Municipal Court Department on April 12, 2012.

The case was tried before Annette Forde, J., and a motion to vacate was heard by her.


Edward Gauthier for the defendant.
Zachary Hillman, Assistant District Attorney, for the Commonwealth.


HANLON, J.  After a jury trial in the Boston Municipal

Court, the defendant was convicted of intimidating a person

furthering a court proceeding in violation of G. L. c. 268,

§ 13B (count 1); stalking in violation of G. L. c. 265, § 43

(count 2); threatening to commit a crime in violation of G. L.

c. 275, § 2 (count 3); and unlawful wiretapping in violation of G. L. c. 272, § 99 (count 4). Afterwards, he filed a motion to vacate his conviction on count 1, which was allowed, and that count was dismissed. We have before us the Commonwealth's appeal of that dismissal, and the defendant's cross appeal of his remaining convictions on all counts except count 4. We reinstate the defendant's conviction on count 1 and affirm the other judgments. We remand the case to the trial court for imposition of the original sentences imposed after trial.

Background. Viewing the evidence in the light most favorable to the Commonwealth, the jury could have found the following facts:[1]

At some point prior to 2009, the defendant's mother, Irene Wood, obtained a loan from Wells Fargo Bank (Wells Fargo). Subsequently, the defendant filed suit against Wells Fargo in Superior Court, alleging that his mother's loan was predatory, fraudulent, and unenforceable. Thereafter, the defendant filed another suit against Wells Fargo, among others, in the United States District Court for the District of Massachusetts. Wells Fargo retained the law firm of Nelson, Mullens, Riley and Scarborough (Nelson, Mullens) as defense counsel, and when Sean

---

[1] As the unlawful wiretap conviction (count 4) was not challenged on appeal, the facts giving rise to that conviction are not summarized here.

Higgins joined Nelson, Mullens in February, 2009, he was assigned to work on the ongoing case.

Because the defendant was representing himself pro se in the Federal suit, he and Higgins communicated fairly regularly about the case by telephone, electronic mail message (e-mail), and first class mail.  At the beginning, these communications were in no way out of the ordinary.  However, after some period of time, the defendant added Higgins's e-mail address to a large e-mail list and Higgins began to receive what he described as "spam" e-mails.

In March, 2010, Judge Douglas P. Woodlock of the United States District Court allowed Wells Fargo's motion for summary judgment and dismissed the Federal case, and shortly thereafter, the defendant filed an appeal with the United States Court of Appeals for the First Circuit (First Circuit).  After Judge Woodlock dismissed the case, the tone of the defendant's e-mails and other communications to Higgins began to change.  Specifically, on May 2, 2010, the defendant sent an e-mail accusing Higgins of "disrespect[ing]" the defendant's mother and included a link to a video on the video sharing Web site YouTube of a telephone conversation between the defendant and Higgins.  On June 2, 2010, the defendant sent an e-mail to a large mailing list with a motion attached that he said he intended to file in the Federal suit.  The body of the e-mail said, in part, that

"[t]his motion is about to send thunder claps upon Wall Street when they read it. READ IT AND WEEP ATTORNEY SEAN HIGGINS AND JUDGE DOUGLAS P. WOODLOCK, YOUR JUDGMENT IS AT HAND."

On June 4, 2010, the defendant sent an e-mail to a large mailing list, which contained a link to a YouTube video. The body of the e-mail said, in part, "[L]et this video serve as a warning to Sean Higgins, Judge Woodlock, and anyone else who seeks to commit impropriety in the court . . . . I am trying to do this in a non destructive [sic] manner, but you guys just keep on testing MY LORD . . . . ow [sic] much longer do you supposed [sic] that He will remain patient before commanding me to end it! in my own way!"

On August 12, 2010, the defendant forwarded a mass e-mail that contained a warning about bombs made from ordinary household items, such as plastic bottles. Above the forwarded message, the defendant wrote, in part, "I am even sending this to my opponents Attorney Dudley Goar [sic] and Attoryney [sic] Sean Higgins. I want them to be very careful because want [sic] them to be in one piece and in good health when we face off in the First Circuit court, I will get more satisfaction from that, so guys, read below and be safe."

There was then a lull until October, 2011. During that month, the defendant telephoned Higgins and left him a voice mail message. In the message, the defendant called Higgins a

"bastard" and said that he did not like him.  Higgins testified that, at one point during the litigation, the defendant was telephoning him once or twice per week, but later, after some time, the number of calls decreased.  Sometime before October 12, 2011, the defendant's appeal was dismissed by the First Circuit, and Higgins testified that, right after the appeal was over, the telephone calls stopped.

On October 12, 2011, the defendant sent an e-mail to a large mailing list saying that the First Circuit had ruled against him and that "the first bloodshed will come from Massachusetts before I let ANY ONE take me out of my home."  On October 19, 2011, the defendant sent an e-mail to a large mailing list saying, in part, "SEAN HIGGINS, REMEMBER HOW MUCH I DETEST YOU . . . I WILL NEVER FORGET THAT YOU DISRESPECT [sic] MY MOTHER AND CALLED HER A LIAR . . . LET'S SEE WHO WILL BE THE LIAR WHEN YOU FACE A JURY OF THE REVOLUTION . . . THERE IS A PRISON CELL WAITING FOR YOU AT SOUTH BAY FOR YOUR CRIMES . . . . YOU WILL BE TRIED FOR TREASON AGAINST THE PEOPLE . . . ."  On February 2, 2012, the defendant sent an e-mail to a large mailing list saying, in part, "DO NOT LET MY DEATH BE IN VAIN, MAKE SURE YOU PUT THE BLAME SQUARELY ON SEAN HIGGINS!  AND JUDGE WOODLOCK THE DAY THEY BURY ME!  THEY WILL CAUSE MY BLOODSHED."

On April 1, 2012, the defendant sent an e-mail to a large mailing list saying, in part, "Sean Higgins!  you [sic] are the

only man on Earth I hate beside [sic] the pope and the Rothschild [sic], and I hate you even more than I hate them . . . I cannot wait to roast you!  Not even god will intervene for you when I get my hand around your fat heart . . . . Is your heart light like a feather, or is it heavy as lead!?"  On April 12, 2012, a criminal complaint was issued in the Boston Municipal Court against the defendant for the present offenses.

Discussion.  a.  The Commonwealth's appeal.  After the defendant was convicted and sentenced, he filed a motion to vacate his conviction of intimidation under G. L. c. 268, § 13B (count 1).  The trial judge allowed the motion and vacated the conviction.  In so doing, she agreed with the defendant that the Boston Municipal Court was without jurisdiction to hear that charge because the statute conferring jurisdiction in the District and Boston Municipal Courts over certain criminal matters refers to "intimidation of a witness or juror under section thirteen B of chapter two hundred and sixty-eight."  G. L. c. 218, § 26.  She concluded that this language provided the Boston Municipal Court with jurisdiction only over charges under that section alleging intimidation of a "witness" or a "juror."[2]  The language of the intimidation statute itself, that

---

[2] The full text of G. L. c. 218, § 26, as amended through St. 2010, c. 74, § 1A, provides:

is, G. L. c. 268, § 13B, is broader than that, and in this case,

"The district courts and divisions of the Boston municipal court department shall have original jurisdiction, concurrent with the superior court, of the following offenses, complaint of which shall be brought in the court of the district court department, or in the Boston municipal court department, as the case may be, within which judicial district the offense was allegedly committed or is otherwise made punishable: -- all violations of by-laws, orders, ordinances, rules and regulations, made by cities, towns and public officers, all misdemeanors, except libels, all felonies punishable by imprisonment in the state prison for not more than five-years, the crimes listed in paragraph (1) of subsection (a) of section eight of chapter ninety B, subparagraph (1) of paragraph (a) of subdivision (1) of section twenty-four, paragraph (a) of section twenty-four G and paragraph (1) of section twenty-four L of chapter ninety, paragraph (a) of section thirty-two and paragraph (a) of section thirty-two A of chapter ninety-four C, and section thirty-two J of chapter ninety-four C, section 38B of chapter 127, section one hundred and thirty-one E of chapter one hundred and forty, sections thirteen K, fifteen A and twenty-one A of chapter two hundred and sixty-five and sections sixteen, seventeen, eighteen, nineteen, twenty-eight, thirty, forty-nine and one hundred and twenty-seven of chapter two hundred and sixty-six, and sections one, fifteen and fifteen A of chapter two hundred and seventy-three, and the crimes of malicious destruction of personal property under section one hundred and twenty-seven of chapter two hundred and sixty-six, indecent assault and battery on a child under fourteen years of age, intimidation of a witness or juror under section thirteen B of chapter two hundred and sixty-eight, escape or attempt to escape from any penal institution, forgery of a promissory note, or of an order for money or other property, and of uttering as true such a forged note or order, knowing the same to be forged. They shall have jurisdiction of proceedings referred to them under the provisions of section four A of chapter two hundred and eleven."

We note that the statute was further amended in 2014, but that amendment does not bear on this case.

the defendant was convicted of intimidating a "person who [was] furthering a civil . . . proceeding."  G. L. c. 268, § 13B(1)(c)(iv), as amended through St. 2010, c. 256, § 120. The Commonwealth appeals this dismissal, raising a question of first impression.  After review of the record and the relevant legislative history, we are persuaded that the judge's interpretation is wrong and the conviction on count 1 should be reinstated.

General Laws c. 218, § 26, controls which crimes may be prosecuted in the District and Boston Municipal Courts.  The statute's history tracks the growth of those courts from what were termed "police courts" to the community courts they are today.  See Berg, Rough Justice to Due Process, The District Courts of Massachusetts 1869-2004 2-4, 71-76 (2004).  The statute begins with these words, "The district courts and divisions of the Boston municipal court department shall have original jurisdiction, concurrent with the superior court, of the following offenses . . . ."

The first three categories of offenses listed thereafter include, first, "all violations of by-laws, orders, ordinances, rules and regulations, made by cities, towns and public officers"; second, "all misdemeanors, except libels"; and third, "all felonies punishable by imprisonment in the state prison for

not more than five-years . . . ."[3] The sixth category is a series of offenses described only by their statutory citations (i.e., "sections thirteen K, fifteen A and twenty-one A of chapter two hundred and sixty-five and sections sixteen, seventeen, eighteen, nineteen, twenty-eight, thirty, forty-nine and one hundred and twenty-seven of chapter two hundred and sixty-six").

That category is followed by a seventh category, the one at issue in this case; it includes one offense only by description (as in category six), and two offenses referring to the applicable statute and a short description. Specifically, this seventh category includes, in its entirety, "the crimes of malicious destruction of personal property under section one hundred and twenty-seven of chapter two hundred and sixty-six, indecent assault and battery on a child under fourteen years of age, [and] intimidation of a witness or juror under section thirteen B of chapter two hundred and sixty-eight." The final, or eighth, category includes a list of common-law crimes, with no citation to a statute (i.e., "escape or attempt to escape from any penal institution, forgery of a promissory note, or of an order for money or other property, and of uttering as true such a forged note or order, knowing the same to be forged").

---

[3] The fourth and fifth categories include specific sections of G. L. c. 90 and c. 90B (relating to motor vehicle and motor boat offenses) and G. L. c. 94C (controlled substances).

"'Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and courts must interpret the statute so as to render the legislation effective, consonant with reason and common sense.' Cote-Whitacre v. Department of Pub. Health, 446 Mass. 350, 358 (2006) (Spina, J., concurring)." Rotondi v. Contributory Retirement Appeal Bd., 463 Mass. 644, 648 (2012). The most sensible reading of the relevant portion of the jurisdiction statute, that is, the seventh category discussed supra, is that the Legislature's inclusion in that statute of the citation to G. L. c. 268, § 13B, prohibiting intimidation of a witness (and, for that matter, G. L. c. 266, § 127, prohibiting malicious destruction of property, which falls in the same category) was intended to include all of the offenses made criminal therein, including the behavior prohibited in subsequent amendments to the underlying criminal statute.

The legislative history of G. L. c. 268, § 13B, supports that interpretation. Thus, in September, 1996, in order to increase the maximum penalty for the crime of intimidation, the statute was amended "by striking out . . . the words 'the state prison for not less than two and one-half years and not more than five' and inserting in place thereof the following words:— a house of correction for not more than two and one-half years or in the state prison for not less than two and one-half years

and not more than ten."  St. 1996, c. 393, § 4.  That amendment effectively removed G. L. c. 268, § 13B, from the jurisdiction of the District and Boston Municipal Courts because that crime was then no longer a "felon[y] punishable by imprisonment in the state prison for not more than five-years."

However, in the same 1996 act, which, significantly, was entitled "Chapter 393.  An Act Providing Concurrent Jurisdiction in the Superior and District Courts for the Crime of Intimidation of a Witness" (emphasis added), St. 1996, c. 393, G. L. c. 218, § 26, also was amended by inserting after the word "[fourteen years of] 'age', . . . the following words:— , intimidation of a witness or juror under section thirteen B of chapter two hundred and sixty-eight."  St. 1996, c. 393, § 1. Thus, at the same time, jurisdiction was restored to the District and Boston Municipal Courts for the crime of intimidation.  The idea that, in so doing, the Legislature intended that intimidation of a witness or a juror be prosecuted either in the Superior Court or the District and Boston Municipal Courts, but thereafter reserved for exclusive Superior Court jurisdiction intimidation of "persons furnishing information in connection with a criminal investigation, and . . . 'criminal investigators'" (a crime that had been covered by the earlier version of the statute, see St. 1970, c. 177, and, thus, had been within the jurisdiction of the District and

Boston Municipal Courts since 1970) simply is not reasonable, much less likely.[4]

In 2006, Governor Romney signed into law a bill entitled "An Act Reducing Gang Violence."  See St. 2006, c. 48.  Among other provisions of that act was the revision of G. L. c. 268, § 13B, to broaden its reach.  In 2010, the statute was amended again effective November 4, 2010, substituting the amended clause (iv), providing:  "a person who is furthering a civil or criminal proceeding, including criminal investigation, grand jury proceeding, trial, other criminal proceeding of any type, probate and family proceeding, juvenile proceeding, housing proceeding, land proceeding, clerk's hearing, court ordered mediation, any other civil proceeding of any type," see St. 2010, c. 256, § 120, for the former clause (iv), which read:  "a person who is or was furthering a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type," see St. 2006, c. 48, § 3.  The same amendment substituted the following clause (v), providing:  "a person who is or was attending or had made known his intention to attend a civil or criminal proceeding, including criminal investigation, grand

---

[4] We note that, while the title of the act referred to "Intimidation of a Witness," the language of the statute itself used the phrase "intimidation of a witness or juror," thus supporting the inference that it was the statute as a whole and not merely some of its parts that were to be included in the District and Boston Municipal Courts' jurisdiction.  See St. 1996, c. 393, § 1.

jury proceeding, trial, other criminal proceeding of any type, probate and family proceeding, juvenile proceeding, housing proceeding, land proceeding, clerk's hearing, court-ordered mediation, any other civil proceeding of any type with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby, or do so with reckless disregard, with such a proceeding . . . ," see St. 2010, c. 256, § 120, for the former clause (v), which read:  "a person who is or was attending or had made known his intention to attend a grand jury proceeding, trial or other criminal proceeding of any type with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby with a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type . . . ," see St. 2006, c. 48, § 3.

"'[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'  Commonwealth v. Figueroa, 464 Mass. 365, 368 (2013), quoting from Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).  Where a literal reading would 'lead to an awkward and even intolerable

result,' we will eschew it 'for a more liberal or more encompassing approach.' Mailhot v. Travelers Ins. Co., 375 Mass. 342, 348 (1978)." Rodman v. Rodman, 470 Mass. 539, 541 (1978). Again, the notion that the Legislature, over the years between 1996 and 2010, while dramatically increasing both the penalty and the scope of the intimidation statute to protect more and more people victimized by the crime of intimidation, was at the same time performing the kind of jurisdictional gymnastics envisioned by the defendant is fanciful at best, and certainly not "consonant with reason and common sense." Rotondi v. Contributory Retirement Appeal Bd., 463 Mass. at 648.

The court's analysis in Wilcox v. Riverside Park Enterprises, Inc., 21 Mass. App. Ct. 419, 420 n.2 (1986), is instructive here. In Wilcox, this court said, "[A]n official title to an act does not control the plain provisions of the statute, and, if there is any variation between the title and the body of the statute, the latter governs." Ibid. Compare Commonwealth v. Fernandes, 46 Mass. App. Ct. 455, 458-459 (1999) (when caption and body of indictment are in discord, body of indictment governs). Thus, focusing solely on the statutory language as instructed, G. L. c. 268, § 13B, clearly outlines five separate subsections of persons to be protected from intimidation. G. L. c. 268, § 13B(1)(c)(i)-(v). Subsection (i) pertains to those witnesses warranting protection; subsection

(iii) includes "juror" (or grand juror) embedded within a long list of others (including law enforcement, the judge, and other court personnel).  It is unreasonable to conclude that the Legislature intended, with the phrase "intimidation of a witness or juror," to cherry pick only witnesses or jurors from a substantial list of others in prescribing jurisdiction.

The dissent's citation to Della Jacova v. Widett, 355 Mass. 266 (1969), is not helpful here.  There, in the context of a civil malicious prosecution case, the court noted that a conviction of the plaintiff of the crime of forgery under G. L. c. 267, § 1, in a Municipal Court was beyond the jurisdiction of that court and did not establish conclusively that there had been probable cause for the prosecution.  Id. at 273-274. However, G. L. c. 218, § 26, does not refer to G. L. c. 267, § 1, but only "forgery of a promissory note, or of an order for money or other property, and of uttering as true such a forged note or order, knowing the same to be forged."  That language places that crime not in the seventh category, but in the eighth category, described supra at    -- that is, a list of common-law crimes, with no citation to a statute.  In the case before us, by contrast, there is a reference to the relevant statute:  that is, "intimidation of a witness or juror under section thirteen B of chapter two hundred and sixty-eight" is placed specifically

within the jurisdiction of the District and Boston Municipal Courts.

Both intimidation cases under G. L. c. 268, § 13B, and cases of malicious destruction of all kinds of property under G. L. c. 266, § 127, are tried routinely in the District and Boston Municipal Courts -- without regard for the distinctions urged. See Instruction 7.360 of the Criminal Model Jury Instructions for Use in the District Court (rev. May, 2014). See also Instruction 8.280 of the Criminal Model Jury Instructions for Use in the District Court (2009).

In addition, both the intimidation of a witness statute and the malicious destruction of property statute, along with their respective legislative histories, have been analyzed extensively by the Supreme Judicial Court, each time reviewing a case tried in the District Court on a charge for which the dissent's analysis would conclude that court had no jurisdiction. See Commonwealth v. Hamilton, 459 Mass. 422 (2011) (where the defendant was tried in the District Court for intimidating a probation officer).[5] See also Commonwealth v. Deberry, 441 Mass. 211, 214-215 (2004) (where the defendant was tried in the

---

[5] While the conviction in Hamilton, 459 Mass. at 435, was reversed on the ground that the intimidation took place after all criminal proceedings had ended, behavior not made criminal by the then-existing version of the statute, nowhere in the opinion does the court express concern about the jurisdiction of the District Court to hear the case.

District Court for violation of G. L. c. 266, § 127, specifically, damage to a kitchen wall; the court noted that the offense was prohibited by the statute because "amendments to the statute in 1978 expanded personal property covered by the statute to encompass real property, i.e., 'dwelling house' or 'building.' See St. 1978, c. 544 . . . ").[6]

Finally, while not controlling, it is worth noting that the practical effect of the dissent's position would be to curtail drastically the ability of the Commonwealth to prosecute these crimes -- contrary, one would think, to the intent of the Legislature -- by placing them on Superior Court dockets already bursting with murder, aggravated rape, armed robbery, trafficking, and other serious criminal -- and civil -- cases. In addition, because the dissent concludes that the case turns on jurisdiction, the result urged would open up for collateral attack every such conviction in the last twenty years. We are satisfied that count 1 should not have been dismissed.

b. The defendant's cross appeal. In his cross appeal, the defendant makes several arguments. The first is a claim that a threat to commit a crime is a lesser included offense of stalking and therefore that charge should have been dismissed as

---

[6] The decision in Deberry, 441 Mass. at 215, turned on the issue whether the relevant amount for determining if the damage was in excess of $250 was the amount of damage to the property or the value of the property itself.

duplicative.  Applying the familiar, elements-based approach to double jeopardy issues articulated by the Supreme Judicial Court in Commonwealth v. Vick, 454 Mass. 418, 431 (2009), it is clear that the argument fails because each crime contains elements not present in the other.  Thus, for example, while stalking requires proof that the defendant "[made] a threat with the intent to place the person in imminent fear of death or bodily injury," stalking also requires proof that the defendant "willfully and maliciously engage[d] in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarm[ed] or annoy[ed] that person and would cause a reasonable person to suffer substantial emotional distress."  G. L. c. 265, § 43(a), as amended through St. 2010, c. 92, § 9.

By contrast, threat to commit a crime requires proof that what was threatened was a crime.  See G. L. c. 275, § 2; Commonwealth v. Hamilton, 459 Mass. at 426-427.  Thus, a person could be convicted of a threat to commit a property crime, and if that were the only threat, despite proof that the defendant "willfully and maliciously engage[d] in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarm[ed] or annoy[ed] that person and would cause a reasonable person to suffer substantial

emotional distress," he or she could not be convicted of stalking.  See G. L. c. 265, § 43(a).

Next the defendant argues that there is an error in the docket sheet and mittimus with respect to his sentence on count 2.  On count 1, the defendant was sentenced to two years in the house of correction, with one year to serve, and the balance suspended until April 24, 2019.  On count 2, he was sentenced to two years in the house of correction from and after count 1, suspended until April 24, 2019.  The docket sheet and the mittimus, however, both state that on count 2 the defendant was sentenced to two years in the house of correction committed.

At the hearing on the motion to dismiss, after dismissing count 1, the clerk read the following sentence into the record:

> "The Court has vacated without prejudice your finding of guilty as to Count 1 and the sentence thereafter of two years, one to serve, the balance suspended until April 24th, 2019.  And Counts 2, 3 and 4 stand as imposed on April 30th.  Count 2 is two years in the house of correction, sentence is suspended until April 24th of 2019.  Count 3 is six months in the house of corrections suspended until April 24th of 2019 from and after Count 2.  And Count 4 is committed to the house of corrections, six months, sentence suspended to from and after Count 3."

The judge responded, "Thank you.  All set."  After a discussion between the judge and the clerk about the mittimus, the judge confirmed, "There's no change in the sentence except that . . . Count 1 was vacated."

In light of this, we agree with the Commonwealth, which concedes that the docket sheet and mittimus must be amended to reflect that the defendant's two-year sentence on count 2 should have remained a suspended sentence.  In any event, however, because we reinstate the conviction on count 1, the original sentences must stand.

The defendant argues next that there was insufficient evidence to support his conviction of stalking because there was no threat made with intent to place the victim in imminent fear of death or bodily injury.  In light of all of the evidence detailed above, including the e-mail about explosive water bottles, and the e-mail stating that the defendant could not "wait to roast" the victim and would "get [his] hand around [the victim's] fat heart," we are satisfied that the evidence was sufficient to support the defendant's conviction of stalking.

In addition, we reject the defendant's argument that there was insufficient evidence to support his conviction of threatening to commit a crime, to wit, to kill.  See Commonwealth v. Hamilton, 459 Mass. at 427, quoting from Commonwealth v. Sholley, 432 Mass. 721, 724-725 (2000) ("The elements of threatening a crime include an expression of intention to inflict a crime on another and an ability to do so

in circumstances that would justify apprehension on the part of the recipient of the threat").

Finally, the defendant raises several unpreserved claims of error with respect to the jury instructions. We review these claims to determine if there was error and, if so, whether the error created a substantial risk of a miscarriage of justice. See Commonwealth v. Kelly, 470 Mass. 682, 697 (2015). In sum, we see no error and certainly no substantial risk of a miscarriage of justice.

The defendant argues that the judge erred in giving the stalking instruction without also, sua sponte, instructing the jury on the lesser included offense of harassment. In the defendant's view, because his defense was that he never intended to threaten or frighten the victim, a harassment instruction was warranted. The defendant did not request such an instruction. "[I]n the absence of any request by the defendant for such an instruction, or of any indication that the defendant brought this interpretation of the facts to the judge's attention, the judge was not required to give the instruction sua sponte." Commonwealth v. Tavares, 471 Mass. 430, 439 (2015). Moreover, as the Commonwealth argues, giving an instruction on harassment could have prevented the defendant from obtaining the outright acquittal he sought on the stalking charge. Finally, even if the judge should have discussed with defense counsel in a charge

conference the possibility of giving a lesser included offense instruction, the fact that the jurors convicted the defendant of threatening to kill the victim indicates that it is unlikely that they would have convicted him only of the lesser offense of harassment, rather than stalking, even had they been given the option.

The jury also were not given a specific unanimity instruction on the charge of threat to commit a crime. Again, there was no request for such an instruction, and this case therefore is controlled by Commonwealth v. Julien, 59 Mass. App. Ct. 679, 686 (2003), which holds that, in these circumstances, the failure of a judge sua sponte to give a specific unanimity instruction does not create a substantial risk of a miscarriage of justice.

The defendant raises two claims of error with respect to the instructions on the intimidation charge. Because the defendant did not clearly object at trial, again, we review for error and, if there was error, we review for whether the error gave rise to a substantial risk of a miscarriage of justice. See Commonwealth v. Kelly, 470 Mass. at 697.

The defendant argues first that the judge erred in including the words "harm" or "punish" in explaining the elements of the intimidation of a witness charge to the jurors,

because the Supreme Judicial Court had determined in Commonwealth v. Hamilton, 459 Mass. at 432-436, that those terms were ambiguous. The defendant's argument is misplaced. It is true that the Supreme Judicial Court "invited" the Legislature to clarify the ambiguity in the 2006 version of § 13B "particularly as it relates to retaliatory conduct." Id. at 436. However, the court did not instruct that the terms "harm" or "punish" could no longer be used in instructing the jury on the elements of the charge. Although the judge here may not have provided a strict reading of the intimidation of a witness model jury instruction, he was not required to do so, so long as all of the elements of the crime were included in the instruction given. See Commonwealth v. Robinson, 449 Mass. 1, 8 (2007) ("A judge need not use any particular words in instructing the jury as long as the legal concepts are properly described"). There was no error.

The defendant next asserts that he prepared his case with the understanding that the Commonwealth's theory of the case was that Higgins was a "defense attorney." However, the judge charged the jury that the statute also would punish behavior intimidating "anyone who might be involved in a court proceeding," "an attorney," and "whatever, someone involved in a court proceedings." In the defendant's view, this instruction

improperly extended the statute's protection to "basically anyone involved in the court system." This argument also fails. The evidence presented at trial informed the jury that Higgins was one of the attorneys representing Wells Fargo in the various ongoing civil suits involving the defendant, which places Higgins squarely in the realm of protection afforded by the intimidation statute. See G. L. c. 268, § 13B(1)(c)(iv). To say that Higgins, the lawyer for Wells Fargo, was just "anyone" utilizing the court system is disingenuous. Again, we discern no error in the judge's final charge to the jury, and certainly no substantial risk of a miscarriage of justice. See Commonwealth v. Kelly, supra.

Conclusion. The order dismissing count 1 is reversed. The defendant's conviction on count 1 is reinstated, and his convictions on the remaining counts are affirmed. We remand the matter for further proceedings, including imposition of the original sentences, consistent with this opinion.

So ordered.

RUBIN, J. (dissenting in part and concurring in part).  I join so much of the court's opinion as affirms the defendant's convictions.  Count 1, however, which charged the defendant with intimidation of a person furthering a court proceeding in violation of G. L. c. 268, § 13B, was properly dismissed by the trial judge on the basis of the plain language of the jurisdictional statute, G. L. c. 218, § 26, language consciously and deliberately adopted by the Legislature.  Because we are without power to ignore or amend that language, I respectfully dissent from that portion of the court's opinion reversing the trial judge's order of dismissal.

The plain language of G. L. c. 218, § 26, as amended through St. 1996, c. 393, § 1, says that the District and Boston Municipal Courts have jurisdiction over prosecutions for "intimidation of a witness or juror under section thirteen B of chapter two hundred and sixty-eight," not over cases of intimidation of any other individuals brought under that section.  Likewise, the criminal complaint in this case explicitly says, "Superior Court jurisdiction, however, District Court has final jurisdiction for a witness or juror under G. L. c. 218, § 26."  Relying on the plain language of the statute, the Boston Municipal Court judge properly dismissed count 1.  Where the language of the statute is plain, that should be the

end of our enquiry.  If the Legislature chooses to amend the statute, of course it has power to do so.

Even were the statute ambiguous, however -- and in the end the majority acknowledges it is not -- there is conclusive evidence that the Legislature intended to give the District and Boston Municipal Courts jurisdiction only over intimidation cases made criminal by G. L. c. 268, § 13B, where the victim was a witness or juror.

To begin with, the question is the meaning of the 1996 Act that inserted the relevant words in G. L. c. 218, § 26, St. 1996, c. 393 (the 1996 Act), not the meaning (or history) of the subsequent amendments to the substantive criminal statute, G. L. c. 268, § 13B, on which the majority focuses.  The 1996 Act increased the maximum sentence for a violation of § 13B, which had been five years in State prison, to ten years in State prison.  This had the effect not only of making violation of the statute a more serious crime but also of, commensurate with that, taking all acts criminalized by the statute out of the broad grant to District and Boston Municipal Courts of jurisdiction over any crimes punishable by imprisonment in the State prison for not more than five years.  The 1996 Act at the same time, however, inserted into § 26 the words "intimidation of a witness or juror under section thirteen B of chapter two hundred and sixty-eight."

At the time of the 1996 Act, the structure of G. L. c. 268, § 13B, was different than it is today in a way that makes the "witness or juror" limitation understandable.  The version in effect when the 1996 Act was adopted read:  "Whoever, directly or indirectly, willfully endeavors . . . by misrepresentation, intimidation, force or threats of force to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial or other criminal proceeding or with any person furnishing information to a criminal investigator relating to a violation of a criminal statute of the commonwealth . . . shall be punished . . ." (emphasis added). G. L. c. 268, § 13B, as appearing in St. 1990, c. 369.[1]  As this court explained contemporaneously in Commonwealth v. Isle, 44 Mass. App. Ct. 226, 228 (1998), "[t]he language of the witness intimidation statute has two distinct branches, separated by the word 'or.' The statute may be applied either to witnesses and jurors in ongoing criminal proceedings, or to any person furnishing information to a criminal investigator relating to a crime."

Given the contemporaneous understanding of the statute to have two branches, it makes perfect sense that the Legislature might have intended precisely the result its language achieved

---

[1] The 1996 Act itself added ", grand jury" after the word "trial" in the quoted text, but left this language otherwise intact.  See St. 1996, c. 393, § 3.

with respect to the now-harsher statute:  giving concurrent jurisdiction to the District and Boston Municipal Courts over first branch intimidation cases involving ongoing criminal proceedings, but leaving the Superior Court alone with jurisdiction over cases brought under the other branch of the statute, which at that time included only those involving persons furnishing information to a criminal investigator.  This result does not involve jurisdictional gymnastics; it amounts to a commonplace act of legislative line drawing.

Indeed, and perhaps most significantly, there is conclusive evidence that the decision to draw this line was intentional and not some mere accident of careless phrasing.  As it was originally introduced, the bill that would become the 1996 Act would actually have inserted the language "section 13B of chapter two hundred and sixty-eight" into G. L. c. 218, § 26, which would have given the District and Boston Municipal Courts concurrent jurisdiction over all crimes under the statute.  See 1996 Senate Doc. No. 2264 (introduced March 21, 1996).  It was amended during the legislative process to specify that concurrent jurisdiction was conferred only to prosecutions of "intimidation of a witness or juror" under that section.

Consistent with this, the original draft bill would have inserted the language into the portion of the statute that lists crimes only by statutory section and subsection numbers.  The

final bill, however, inserted the modified language into a different portion of the statute that contains verbal descriptions of covered crimes.[2]

This statutory history, not mere "legislative history," but the history of the text of the statute itself, clarifies any ambiguity and confirms that the Legislature deliberately limited the scope of District and Boston Municipal court jurisdiction with respect to acts made criminal under G. L. c. 268, § 13B, to the "witnesses and jurors" branch of the statute.

To be sure, G. L. c. 268, § 13B, was amended dramatically in 2006 so that it now covers much more conduct.  Under the 2006 amendments, intimidation of many other categories of individuals was criminalized.  St. 2006, c. 48, § 3.  And in 2010, the statute was amended again to include the category relevant here,

---

[2] It suffices for present purposes to note that the statute contains the two portions I have described.  While Borges might admire the ponderous eight-branch taxonomy put forward by the court majority, I find it more confusing than helpful.  Cf. Borges, The Analytical Language of John Wilkins, in Other Inquisitions 1937-1952 (Ruth L. Simms trans. University of Texas Press, 1964) (purporting to quote a Chinese encyclopedia, the Celestial Emporium of Benevolent Knowledge, that states that "animals are divided into [a] those that belong to the Emperor, [b] embalmed ones, [c] those that are trained, [d] suckling pigs, [e] mermaids, [f] fabulous ones, [g] stray dogs, [h] those that are included in this classification, [i] those that tremble as if they were mad, [j] innumerable ones, [k] those drawn with a very fine camel's hair brush, [l] others, [m] those that have just broken a flower vase, [n] those that resemble flies from a distance").

"a person who is furthering a civil or criminal proceeding."
St. 2010, c. 256, § 120.

Nonetheless, the Legislature has not amended G. L. c. 218, § 26, to expand the concurrent jurisdiction of the District and Boston Municipal Courts to include cases involving intimidation of anyone other than jurors or witnesses.  Of course, it may do so.  Perhaps the majority thinks the Legislature should already have done so.  But it has not done so, and, unless it violates the State or Federal Constitution -- which this limitation obviously does not -- it is not for us to ignore or amend legislative language that clearly and correctly expresses the intent of the Legislature.

Today's majority is not the first to assert that it is not "sensible" or "reasonable" to conclude that the Legislature meant what it said.  But the language of the statute, confirmed by the statutory history, leaves no doubt.  To the extent the majority attempts to make the line drawn here seem so arbitrary that it is "unreasonable to conclude" that this is what the Legislature meant -- and in light of the structure of G. L. c. 268, § 13B, at the time of adoption of the 1996 Act, there is little to the majority's argument -- one need look no further for refutation than the portion of G. L. c. 218, § 26, construed in Della Jacova v. Widett, 355 Mass. 266 (1969).  The Legislature decided in that portion of the statute that the

District Court would be given concurrent jurisdiction with the Superior Court over "forgery of a promissory note, or of an order for money or other property," but not for forgery of anything else prohibited by G. L. c. 267, § 1, including what was at issue in Della Cova, forgery of an access slip to a safe deposit box.  Id. at 273.  The line at issue in this case is no less "sensible" or "reason[able]" than the line drawn there.

In the end, apparently recognizing that the trial judge in fact correctly employed the "literal reading" of the statutory text, the majority concludes that the Legislature's line drawing here is so "intolerable" that we should depart from what the statute says.  Ante at     .

Whatever our power, if any, under Supreme Judicial Court precedent to ignore plain statutory language that was deliberately enacted and that does not violate the State or Federal Constitution, I simply cannot agree that a difference of opinion whether a subset of one crime over which the Superior Court has jurisdiction may also be heard in the District and Boston Municipal Courts warrants its exercise.  Since the trial judge correctly construed the statute, I would affirm her order of dismissal.[3,4]

---

[3] The majority correctly holds that the practical concerns it raises cannot trump the language of the statute. Nonetheless, it is worth noting that there is some reason to question the majority's assertion that properly reading the

statute will open the floodgates of collateral attack.  While the record contains no information about the frequency of prosecution in the District or Boston Municipal Courts of cases of intimidation under G. L. c. 268, § 13B, where the victim was not a juror or witness, there appears to be only a single reported appellate decision since the expansion of § 13B in 2006 which involved such a prosecution.  The only reported appellate decision for a prosecution for intimidation of anyone other than a witness or a juror under the version of § 13B in place for the decade between the amendment of G. L. c. 218, § 26, in 1996 and the expansion of G. L. c. 268, § 13B, in 2006, was tried in the Superior Court.  <u>Commonwealth</u> v. <u>King</u>, 69 Mass. App. Ct. 113 (2007).

[4] The defendant also argues that there is an error in the docket sheet and mittimus with respect to his sentence on count 2.  On count 1, which, as described, was dismissed, the defendant was sentenced to two years in the house of correction one year to serve, the balance suspended until April 24, 2019.  On count 2, he was sentenced to two years in the house of correction from and after count 1, suspended until April 24, 2019.  The docket sheet and the mittimus, however, both state that on count 2 he has been sentenced to two years in the house of correction committed.

After dismissing count 1, the clerk read the following sentence into the record: "The Court has vacated without prejudice your finding of guilty as to Count 1 and the sentence thereafter of two years, one to serve, the balance suspended until April 24th, 2019.  And Counts 2, 3 and 4 stand as imposed on April 30th.  Count 2 is two years in the house of correction, sentence is suspended until April 24th of 2019.  Count 3 is six months in the house of corrections suspended until April 24th of 2019 from and after Count 2.  And Count 4 is committed to the house of corrections, six months, sentence suspended to from and after Count 3."  The judge responded, "Thank you.  All set."  After a discussion between the judge and the clerk about the mittimus, the judge confirmed, "There's no change in the sentence except that . . . Count 1 was vacated."

In light of this, the Commonwealth correctly concedes that the docket sheet and mittimus must be amended to reflect that the defendant's two-year sentence on count 2 should have remained a suspended sentence.  I read the majority's remand order to require this.